RICHARD E. CARP AND MINDA G. CARP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; FRANKLIN D. ZUCKERMAN AND LOIS ZUCKERMAN Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carp v. Commissioner
Docket Nos. 10476-90, 11016-90
United States Tax Court
T.C. Memo 1991-436; 1991 Tax Ct. Memo LEXIS 485; 62 T.C.M. (CCH) 658; T.C.M. (RIA) 91436; September 5, 1991, Filed *485 Decisions will be entered for the respondent. Byron R. Prusky, for the petitioners. Lisa Primavera-Femia, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM OPINION In these consolidated cases respondent determined the following deficiencies in petitioners' Federal income taxes for 1984: Petitioners
Deficiency
Richard E. and Minda G. Carp
$ 1,495 Franklin D. and Lois Zuckerman
931
After concessions by petitioners, the only issue presented for decision is whether a $ 150,000 amount designated as a development fee constitutes a qualified rehabilitation expenditure under section 48(a)(1)(E). [1]
All of the facts are stipulated and so found. The stipulation of fact and the attached exhibits are incorporated herein by this reference. The pertinent facts are summarized below. *486 Facts
Richard E. and Minda G. Carp resided in Wynnewood, Pennsylvania, and Franklin D. and Lois Zuckerman resided in Cherry Hill, New Jersey, when they filed their respective petitions in these cases. On or about June 23, 1984, Mr. Carp and Mr. Zuckerman executed an agreement purporting to form a Pennsylvania limited partnership named 1719 Green Street Associates (the partnership) which designated them as the general partners. The purpose of the partnership was to purchase, renovate, sell, lease or otherwise operate six condominium units located at 1719 Green Street, Philadelphia, Pennsylvania (the property). The term of existence of the partnership was to end on December 31, 2024. On July 13, 1984, Mr. Carp and Mr. Zuckerman entered into an agreement of sale with Hallmark Restorations, Inc. (Hallmark), for the purchase and restoration of the property. The agreement of sale had been completely negotiated by that date. Pursuant to the agreement of sale, Hallmark agreed to secure the historic certification, to renovate the property, to assist in applying for permanent financing, and to prepare all the documents necessary to establish the property as a condominium pursuant *487 to Pennsylvania law. The purchase price for the property (building and land) was $ 70,000, and Hallmark agreed to rehabilitate it for $ 535,000. On July 13, 1984, a document entitled "Development Agreement Related to the purchase of the Building Located at 1719 Green Street Philadelphia, Pa. 19130" (the development agreement) was executed by Mr. Carp and Mr. Zuckerman as general partners in the partnership and as "Partners (Carp/Zuckerman)." Pursuant to the development agreement, "Carp/Zuckerman" was to receive $ 150,000 (payable by $ 35,000 in cash and $ 115,000 by "Developers Note") for developing the property "into a Historically Certified Complex of 6 rental units." The development agreement provided, in part, as follows: 2) DUTIES AND OBLIGATIONS OF CARP/ZUCKERMAN A) To purchase or otherwise acquire the building known as 1719 Green Street, Philadelphia, PA 19130, a Historically Certified property B) To develop, rehabilitate and improve said building into 6 condominium units C) To negotiate and enter into a "turn key" fixed cost construction contract for the renovations [sic] of the building D) Secure all government permits E) To obtain Historical Certification F) To *488 supervise all construction, review and pass on all plans, arrange financing, consult with contractor G) Upon completion and simultaneously with the placing of the permanent first mortgage, transfer said building to [the partnership].
3) DUTIES AND OBLIGATIONS OF GENERAL PARTNERS A) To arrange investor financing B) To prepare all documents relating to [the partnership] C) To be prepared to receive the completely renovated building, once certification of occupancy is issued and permanent financing is completed D) To completely operate, maintain and rent condominium units until such time that the building is sold and [the partnership] liquidated
On August 9, 1984, Mr. Carp and Mr. Zuckerman had a private placement memorandum prepared to provide for the syndication of partnership interests in the partnership. In late August of 1984, five limited partners purchased interests of 19.6 percent each in the partnership. Each of the five made an initial contribution of $ 24,000. The property was rehabilitated by Hallmark in accordance with the agreement of sale. On December 24, 1984, the property was conveyed to the partnership from Mr. Carp and Mr. Zuckerman. The property *489 was placed in service in 1984. The last limited partner was admitted to the partnership on August 31, 1984. The partnership purchased the property for $ 755,000, consisting of a cash downpayment of $ 95,500, a wraparound mortgage to Carp/Zuckerman in the amount of $ 544,500, and the developers note to Carp/Zuckerman in the amount of $ 115,000. The wraparound mortgage and the developers note were subordinate to a first mortgage to Chase Savings and Loan Association in the amount of $ 484,000 and a second mortgage to Hallmark in the amount of $ 60,500, both from Mr. Carp and Mr. Zuckerman. On their Federal income tax returns for 1984, the occupations of Mr. Carp and Mr. Zuckerman were reported as investment sales and investment counselor, respectively. The partnership filed its Form 1065, U.S. Partnership Return of Income, for the taxable period beginning August 29, 1984, and ending December 31, 1984, using the accrual method of accounting. The return shows that the business started on August 29, 1984. The partnership claimed total qualified rehabilitation expenditures relating to the property of $ 727,455. Included in the $ 727,455 was the $ 150,000 amount Carp/Zuckerman was *490 to receive under the development agreement. Respondent determined that the $ 150,000 amount was not a qualified rehabilitation expenditure, and, therefore, disallowed the distributive share of the rehabilitation credit attributable thereto claimed by Mr. Carp and Mr. Zuckerman on their respective Federal income tax returns. [2]
Discussion
Respondent contends that petitioners have not proved that Mr. Carp and Mr. Zuckerman performed the services enumerated in the development agreement, and that the services were duplicative of those which Hallmark was to perform under the agreement of sale. Respondent also contends that the development agreement was not a bona-fide agreement *491 with a legitimate business purpose, implying that the partnership did not exist when it was signed and asserting that the fee was in substance for syndication of the interests in the partnership. Finally, he contends that the $ 150,000 amount represented a cost of acquiring the building on the property, and as such was not a qualified rehabilitation expenditure. Petitioners assert that the $ 150,000 amount was intended as a development fee "for all purposes, including its legal substance and effect," as supported by its characterization in the private placement memorandum and the developers note. They also argue that the contracts, submitted as stipulated exhibits, speak for themselves in establishing that Mr. Carp and Mr. Zuckerman performed qualifying development services and that no further evidence is necessary. Finally, they maintain that Mr. Carp and Mr. Zuckerman "spent many hours in meetings" regarding various aspects of the renovation and made all decisions relating to the common areas, such as selecting carpeting. We agree with respondent that petitioners have failed to prove that they performed the development services specified in the development agreement. Thus, *492 we need not address respondent's other contentions. Before the repeal of the investment tax credit and other amendments relating thereto by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2166-2180, section 38 allowed a credit for certain property. [3] For certified historic structures, the rehabilitation percentage of the credit was 25 percent as provided by section 46(a)(2)(F). Section 48(a)(1)(E) included as section 38 property qualified rehabilitation expenditures as defined in section 48(g). In general, a qualified rehabilitation expenditure was any amount incurred after 1981, which was properly chargeable to capital account, for 18-year recovery property which was real property, or improvements or additions thereto, in connection with the rehabilitation of a qualified rehabilitated building. Sec. 48(g)(2)(A). The cost of acquiring the building or interest therein was excluded from the term "qualified rehabilitation expenditure" by section 48(g)(2)(B)(ii). *493 Petitioners bear the burden of proving that the $ 150,000 amount represented a fee which would constitute a qualified rehabilitation expenditure. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). In order to meet their burden, they must establish that the fee was in substance for services of Carp/Zuckerman relating to rehabilitation of the property, negotiation of the construction contract with Hallmark, securing government permits, obtaining the "Historical Certification," and supervision of construction, which are the services specified in the development agreement that would make the fee a qualified rehabilitation expenditure. In our judgment they have failed to do so. Except for the negotiation of the construction contract with Hallmark and the supervision of construction and renovation, Mr. Carp and Mr. Zuckerman contracted for Hallmark to perform the services enumerated. Petitioners have failed to show that any services relating to the rehabilitation of the property, securing government permits, or obtaining the historical certification were not duplicative of Hallmark's services. Cf. Diamond v. Commissioner, 92 T.C. 423, 445 (1989), *494 affd. 930 F.2d 372 (4th Cir. 1991); Durkin v. Commissioner, 87 T.C. 1329, 1398-1399 (1986), affd. 872 F.2d 1271 (7th Cir. 1989). There was no objective evidence submitted detailing the time and effort spent by Mr. Carp and Mr. Zuckerman on any of the services, such as time records or memoranda recounting meetings or other efforts as to such services. The cases were submitted on a fully stipulated basis so that neither Mr. Carp nor Mr. Zuckerman testified regarding their time and effort. In the analogous area of whether expenses are syndication fees which must be capitalized, we have found it inappropriate to apply the rule of Cohan v. Commissioner, 39 F.2d 540 (1930), to estimate whether part of the expenses would be deductible where the taxpayer who has "ready access" to supportive evidence fails to produce such evidence. Durkin v. Commissioner, 87 T.C. at 1397, 1399; see also Diamond v. Commissioner, supra.In Diamond, guaranteed payments were made to the general partners of a limited partnership formed to engage in a research and development joint venture. *495 The taxpayers contended that the payments were made for management services, whereas the Commissioner maintained that they were for syndication or organizational expenses. This Court stated that the taxpayers did not provide a basis for estimating under Cohan v. Commissioner, supra, what portion of the payments related to deductible management fees and to capitalizable syndication expenses. We observed that the management services were duplicative to some extent of services furnished by other entities. Consequently, we held that the fees had to be capitalized. This issue was not raised on appeal. The Durkin case involved legal fees for various services, including tax advice, negotiation of contracts, and efforts to organize and syndicate the partnerships. In concluding that most of the fees had to be capitalized, this Court stated (87 T.C. at 1399) as follows: The petitioners' failure to provide any objective evidence concerning the services performed by the law firm for the partnerships is troubling. If any objective evidence exists, such as time sheets, petitioners' counsel, who are members of the law firm, should have produced *496 such evidence. On this record, we cannot determine what services the law firm performed for the partnerships, other than Mr. Eisenberg's activities, and therefore, we cannot allow a deduction for any of the legal services except those specifically allocated to Mr. Eisenberg.
Similarly, petitioners here have not submitted evidence which would enable us to allocate the $ 150,000 amount to the various services specified in the development agreement. Furthermore, some of the services which Carp/Zuckerman was to perform involved costs relating to the acquisition of the building portion of the property, which are specifically excluded from the definition of qualified rehabilitation expenditures by section 48(g)(2)(B)(ii). The record in these cases provides no basis for allocating the $ 150,000 amount between qualifying services and nonqualifying services. [4]
We reject *497 petitioners' assertion that the $ 150,000 amount was intended as a development fee for all purposes. They have not submitted sufficient evidence from which to divine such an intent. Likewise, we reject their contention that the contracts establish that qualifying development services were performed by Mr. Carp and Mr. Zuckerman. The development agreement enumerates various services to be performed by Carp/Zuckerman, including some which are duplicative of those of Hallmark and some which are nonqualifying for the credit. The contracts do not provide the objective evidence necessary for a Cohan allocation of the $ 150,000 amount to qualifying services. Cf. Diamond v. Commissioner, 92 T.C. at 445; Durkin v. Commissioner, 87 T.C. at 1397, 1399. Moreover, the contracts alone do not prove that the specified services were performed by Carp/Zuckerman. Petitioners state in their brief that "There was no evidence submitted with regard to the [many hours of meetings, etc. spent by Mr. Carp and Mr. Zuckerman] because these services are typical and self-evident in any rehabilitation project, and therefore further evidence was not necessary." However, *498 in our view such evidence is necessary, and it is lacking here. To reflect our conclusion regarding the disputed issue and the concessions made by petitioners, Decisions will be entered for the respondent. Footnotes
1. Unless indicated otherwise, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent also disallowed $ 60,000 representing initial acquisition cost of the building portion of the property, $ 9,000 representing the cost of appliances, $ 4,800 representing the cost of carpeting, and $ 4,700 representing the cost of landscaping. Petitioners conceded that these amounts are not qualified rehabilitation expenditures.↩
3. The present rehabilitation credit is provided in sec. 47, I.R.C. 1986↩ as amended.
4. We note that the record does not contain evidence which would indicate that any amount was paid for organizing and syndicating the partnership.↩